411 So.2d 330 (1982)
Richard J. OSTERNDORF and Pauline F. Osterndorf, Appellants,
v.
John TURNER, Etc., et al., Appellees.
No. 81-864.
District Court of Appeal of Florida, Fifth District.
March 24, 1982.
*331 Richard J. Osterndorf, Daytona Beach, for appellants.
Jim Smith, Atty. Gen., and Barbara Staros Harmon, Asst. Atty. Gen., Tallahassee, for appellees.
ORFINGER, Judge.
Appellants appeal from a final order of the trial court upholding the constitutionality of section 196.031(3)(e), Florida Statutes (Supp. 1980). This statute grants an enhanced homestead exemption to persons otherwise entitled to the exemption and who have been residents of the state for the five consecutive years prior to claiming the exemption. We affirm.
In October, 1980, Article VII, section 6, of the Florida Constitution was amended by the electorate so as to provide, in pertinent part, as follows:

By general law and subject to conditions specified therein, the exemption shall be increased to a total of the following amounts of assessed value of real estate for each levy other than those of school districts: fifteen thousand dollars with respect to 1980 assessments; twenty thousand dollars with respect to 1981 assessments; twenty-five thousand dollars with respect to assessments for 1982 and each year thereafter. (emphasis supplied).
Conditioned upon the approval and taking effect of the foregoing amendment, the Legislature had adopted section 196.031(3)(e), which provides:
For every person who is entitled to the exemption provided in subsection (1) and who has been a resident of this state for the 5 consecutive years prior to claiming the exemption under this subsection, the exemption is increased to a total of the following amounts of assessed valuation for levies of taxing authorities other than school districts: $15,000 with respect to 1980 assessments; $20,000 with respect to 1981 assessments and $25,000 with respect to assessments for 1982 and each year thereafter. However, the increase provided in this paragraph shall not apply with respect to the assessment roll of a county unless and until the roll of that county has been approved by the executive director pursuant to section 193.114.
Appellants, who own real property in Volusia County, but who have resided there for less than five years, challenged the five-year residency requirement prerequisite to *332 their eligibility for the $25,000 homestead exemption in the year 1982, contending that it created an arbitrary, capricious and discriminatory classification, thus violative of appellants' rights of equal protection and due process under both the federal and state constitutions.
After the pleadings were in, both parties moved for summary judgment. The trial court entered final summary judgment for the appellees, holding that the right to receive an increased ad valorem tax exemption is not a fundamental right guaranteed either explicitly or implicitly by the United States Constitution; that an increased ad valorem tax exemption is not a basic necessity of life so that the statute under attack did not penalize the exercise of the constitutional right to travel; that the equal protection test was the "rational basis" test and that the asserted legislative purposes behind the statute include requiring new residents to help offset their immediate fiscal impact upon local government's capital outlay, while affording long-term residents the increased exemption made possible by their tax dollars.
Appellants' principal argument is that section 196.031(3)(e), in providing for an increased ad valorem tax exemption unconstitutionally discriminates between homeowners who have been residents of the state for five or more consecutive years and those who have not resided in Florida for at least five years. Appellants submit that the trial court in its equal protection analysis, erred in applying the "rational basis" test and in not applying the "strict scrutiny" test to this legislative classification, arguing that the enactment interferes with the fundamental right to travel and that the state failed to show that the distinction between residents furthers a compelling state interest. In the case of In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980), our Supreme Court analyzed the equal protection decisions of the United States Supreme Court and concluded that:
The strict scrutiny analysis requires careful examination of the governmental interest claimed to justify the classification in order to determine whether that interest is substantial and compelling and requires inquiry as to whether the means adopted to achieve the legislative goal are necessarily and precisely drawn. This test, which is almost always fatal in its application, imposes a heavy burden of justification upon the state and applies only when the statute operates to the disadvantage of some suspect class such as race, nationality, or alienage or impinges upon a fundamental right explicitly or implicitly protected by the constitution. Those fundamental rights to which this test applies have been carefully and narrowly defined by the Supreme Court of the United States. [citations omitted].
Id. at 42.
The right to travel has been recognized by the United States Supreme Court as a fundamental right[1] and durational residency requirements, because they disadvantage a class of persons who have recently exercised the right, may in certain circumstances, trigger application of the strict scrutiny test. Hawaii Boating Ass'n v. Water Transportation Facilities, 651 F.2d 661 (9th Cir.1981). In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Court, applying the strict scrutiny test, found a one year durational residency requirement as a condition for receiving welfare benefits to be unconstitutional.[2] In Dunn v. Blumstein, 405 U.S. 330, *333 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) and Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the Court also applied strict scrutiny and held that durational residency requirements which involved deprivations of the right to vote and free indigent medical care were impermissible.
Not every durational residency requirement has invoked application of strict scrutiny. In Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Court, rejecting strict scrutiny, upheld an Iowa statute which imposed a one year residency requirement as a prerequisite to filing for divorce. In Starns v. Malkerson, 326 F. Supp. 234 (D.C.Minn. 1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the Court affirmed a district court ruling that permitted the University of Minnesota to condition payment of in-state tuition on a one-year durational residency requirement.[3] In Hawaii Boating, the court approved a statute which imposed higher mooring and docking fees upon boat owners who were residents of the state for less than twelve months.
Synthesizing these cases indicates that the crucial consideration in determining which test applies to a durational residency requirement lies in the nature of the benefit denied by the requirement. Strict scrutiny has been employed where the requirement denies a "basic necessity of life" (Shapiro and Maricopa County) or a "fundamental political right" (Dunn), thus deterring the "fundamental right of travel." A durational residency requirement which does not operate as a significant penalty on the right to travel will be examined under the rational basis test. Hawaii Boating.
In Hawaii Boating, plaintiffs, who lived in the state for less than twelve months and did not meet the residency requirement argued that the statute violated the equal protection clause of the Fourteenth Amendment because it impaired their fundamental right to travel and that strict scrutiny was the applicable standard.
The Ninth Circuit rejected this contention, finding that the durational residency requirement for preferential rates was not a "significant penalty" on the right to travel. 651 F.2d at 665. The court viewed the case as being more closely akin to the college tuition situation found in Starns v. Malkerson, and in applying the rational basis test, held that the fee structure was valid.
In the instant case, section 196.031(1) grants a $5,000 homestead exemption to all permanent residents of this state who own real property and reside thereon. Subsection (3)(e) imposes a five-year durational residency requirement on a homeowner's entitlement to an enhanced ad valorem tax exemption, not on the basic exemption. Certainly the amount of the homestead tax exemption on real property is important to the homeowner, but it cannot be categorized as a "basic necessity of life" as are welfare benefits and free hospital care to indigents. Neither can it be called a fundamental political right. Therefore, since a homeowner's right to be free from disparate taxation is not, of itself, a fundamental right, and the classification here, for the reasons stated, does not impose a significant penalty on the right to travel, the trial court was correct in reviewing this case under the rational basis test, rather than under "strict scrutiny".
In Greenberg, the Florida Supreme Court enunciated the applicable considerations in applying the rational basis test:
The rational basis or minimum scrutiny test generally employed in equal protection *334 analysis requires only that a statute bear some reasonable relationship to a legitimate state purpose. That the statute may result incidentally in some inequality or that it is not drawn with mathematical precision will not result in its invalidity. Rather, the statutory classification to be held unconstitutionally violative of the equal protection clause under this test must cause different treatments so disparate as relates to the difference in classification so as to be wholly arbitrary.
390 So.2d at 43.
In the record before us, there was submitted, in support of appellees' motion for summary judgment, the affidavit of Representative Ralph Haben,[4] outlining legislative concerns in the adoption of the subject legislation. The trial court found that these concerns included the desire that new residents help offset their immediate fiscal impact upon local governments' capital outlay, while affording long-term residents the increased exemption made possible by their tax dollars. Since the homestead exemption in question applies to real property taxes, and since such property taxes inure only to the benefit of local government, such would appear to be a rational basis upon which the state could base the durational residence requirement. As was pointed out by the district court in Starns v. Malkerson:
We believe that the State of Minnesota has the right to say that those new residents of the State shall make some contribution, tangible or intangible, towards the State's welfare for a period of twelve months before becoming entitled to enjoy the same privileges as long term residents possess to attend the University at a reduced resident's fee.
326 F. Supp. at 241.
Appellants next argue that there is nothing in Article VII, section 6, Florida Constitution, which authorizes creation of the durational residency requirement found in section 196.031(3)(e). They rely on Sparkman v. State, 58 So.2d 431 (Fla. 1952), for the proposition that a provision of the state constitution cannot be altered, contracted or enlarged by legislative enactment.
Sparkman involved the interpretation of section 7, Article X, of the Constitution of 1885, as amended, which granted a $5,000 homestead exemption to persons residing in this state and making it their permanent home. The section concluded by providing that:
The Legislature may prescribe appropriate and reasonable laws regulating the manner of establishing the right to said exemption.
By statute, the legislature subsequently created a one-year residency requirement as a prerequisite to entitlement to the exemption. The Florida Supreme Court found that the statute in question was invalid because it added a condition not found in the constitution, i.e., the one-year residency requirement.
The circumstances here are clearly distinguishable. The current constitutional provision, Article VII, section 6(d), provides in relevant part:

By general law and subject to conditions specified therein, the exemption shall be increased to a total of the following amounts... . (emphasis added).
This language is much broader than that discussed in Sparkman.[5] It grants to the legislature the authority to make entitlement to the increased exemption conditional upon the satisfaction of certain criteria. Therefore, we do not find that section 196.031(3)(e) conflicts with the present constitutional language or intent.
*335 The judgment of the trial court is affirmed. Recognizing the impact of the statute and of this decision on all taxpayers and upon the taxing authorities throughout the state, and because the questions presented are of great public importance, we certify the following questions to the Supreme Court of Florida:
1. DOES SECTION 196.031(3)(e), FLORIDA STATUTES (SUPP. 1980), VIOLATE THE EQUAL PROTECTION CLAUSE OR THE DUE PROCESS CLAUSE OF EITHER THE STATE OR FEDERAL CONSTITUTION?
1. DOES SECTION 196.031(3)(e), FLORIDA STATUTES (SUPP. 1980), VIOLATE THE PROVISIONS OF ARTICLE VII, SECTION 6, OF THE CONSTITUTION OF FLORIDA, AS AMENDED IN 1980?
Judgment AFFIRMED. Questions Certified.
COBB and COWART, JJ., concur.
NOTES
[1] This case does not involve a suspect class, nor is freedom from disparate taxation a federally protected fundamental right. See Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 1253 (1937). ("Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation"). See also Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (In the area of economics, a state does not violate the Equal Protection clause merely because the classifications made by its laws are imperfect.)
[2] The Court in Shapiro made it clear that:

We imply no view of the validity of waiting-period or residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right to interstate travel.
394 U.S. at 639, 89 S.Ct. at 1333.
[3] In distinguishing Starns from Shapiro, the district court noted that in Shapiro the Court found that the one-year waiting period had as a special objective the exclusion from the jurisdiction of the poor who needed or may need relief. 326 F. Supp. at 237. Additionally, because the waiting period had the effect of denying a basic necessity of life, the deterring effect on interstate travel was readily apparent. Id. at 238.
[4] Affiant was a member of the Florida Legislature and a member of the House Committee on Taxation and Finance during all relevant times. Appellant contends on appeal that the affidavit is hearsay and should not be considered, but no objection to the affidavit was asserted before the trial court, and we will not consider such objection made for the first time on appeal.
[5] It is also much broader than the language found in Article VII, section 6(a), Florida Constitution, (the current $5,000 homestead exemption provision), which provides that the exemption shall be granted "upon establishment of right thereto in the manner prescribed by law."